IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| GRETCHEN J. BILLINGS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-518-N-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## Introduction

Currently pending before the Court for consideration is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Gretchen J. Billings ("Petitioner") on December 1, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the decision of the Commissioner.

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 26, 2006, alleging disability due to depression and anxiety disorders.

**MEMORANDUM DECISION AND ORDER - Page 1**

Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Hayward C. Reed held a hearing on March 19, 2008, taking testimony from Petitioner and medical expert Allen Bostwick, Ph.D. (AR 300–352.) The hearing was continued so that additional evidence could be obtained. At the continued hearing held on July 24, 2008, Petitioner, medical expert Allen Bostwick, Ph.D., and vocational expert Karen Black testified. (AR 19–48.) ALJ Reed issued a decision finding Petitioner not disabled on August 7, 2008. (AR 10–18.)

Petitioner filed a timely appeal to the Appeals Council which denied her request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–4.) Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the July 24, 2008 hearing, Petitioner was forty-eight years of age. She has a high school education and her past relevant work includes work as a file clerk, general laborer, waitress, child care worker, and sewing machine operator.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged amended onset date. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's depression with intermittent mania and anxiety "severe" within the meaning of the

Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was able to perform her past relevant work as a file clerk, general laborer, and sewing machine operator. Therefore, the ALJ issued a finding that Petitioner was not disabled at step four based upon her ability to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Because the ALJ determined that Petitioner had the residual functional capacity to perform her past relevant work, the ALJ did not proceed to step five.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work

experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court should not disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment

is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the third and fourth steps of the sequential evaluation process. At the third step, Petitioner contends that the ALJ erred by failing to find that, based upon the examining psychologist's evaluation, Petitioner's mental impairments did not meet or equal a listing. At the fourth step, Petitioner contends that the ALJ's RFC determination did not adequately resolve conflicts in the medical opinions, and therefore did not include all of Petitioner's limitations. The Court will address each of these arguments, beginning with the analysis at step four concerning the conflicting evidence in the record.

**A.     Conflicting Evidence in the Record**

Petitioner contends that the ALJ erred because he failed to resolve the inherent conflict present in Dr. Renfro's report. After the first hearing, Dr. Renfro performed a consultative psychological evaluation on April 14, 2008. (AR 289– 299.) Dr. Renfro reviewed Petitioner's medical records, which included an evaluation by her treating physician, Dr. Iddins, who had diagnosed Petitioner in October of 2006 with major depressive disorder, anxiety disorder, and indicators of underlying personality disorder. (AR 290, 190–192.) Dr. Renfro also reviewed the evaluations of Dr. Stevens, performed in January and February of 2008, which reaffirmed Dr. Iddins's diagnosis and generated the further impression of bipolar disorder, mixed type, due to

Petitioner's self reports of manic episodes.  (AR 290, 282–283.)  Finally, Dr. Renfro reviewed the reports from Petitioner's psycho-social rehabilitation service providers, who had been visiting Petitioner twice a week, and reviewed treatment notes from Petitioner's counselor, who provided services once a week.  (AR 290, 238–267.)

Dr. Renfro noted that Petitioner reported difficulty with concentration, attention, and distractibility, and observed her responses to direct inquiry to be rambling and tangential.  (AR 291.)  However, after performing a battery of tests, Dr. Renfro observed that Petitioner "evidenced no difficulty" on tasks demonstrating mental control; performed within the "average range" in tasks suggesting overall cognitive functioning; had "no difficulty effectively comprehending all necessary task instructions;" and displayed "well developed concentration and attention skills, evidencing no unusual signs of distractibility or intolerance to frustration."  (AR 292.)  In addition, Dr. Renfro observed that Petitioner sustained a "well developed level of task engagement and motivation" during the evaluation process, and while her general range of performance fell within the low end of the average range, such results "do not immediately describe the presence of any specific area of deficit or dysfunction."  (AR 293.)  Petitioner displayed "well developed attention and concentration."  (AR 294.)  Nothing in her test results gave Dr. Renfro the impression that Petitioner was malingering or deliberately attempting to distort her test results.  (AR 294.)

Ultimately, Dr. Renfro concluded that Petitioner's symptoms indicated behavioral issues and difficult social adjustment that were chronic in nature and would likely result in difficulties with social adaptation and stability of performance over time.  Dr. Renfro agreed with the Petitioner's treating physicians' diagnoses of major depressive disorder, post-traumatic stress

disorder, bipolar disorder-mixed type, and generalized anxiety disorder. (AR 296.) Dr. Renfro assessed Petitioner's current functioning with a GAF score of 40-45. (AR 296.)

Dr. Renfro also concluded within the narrative of his report:

> At present, she appears to have moved into a period of sustained abstinence from the use of alcohol, is developing the beginnings of a potentially stable social support system, and is receiving substantial levels of direct mental health assistance and support. With these elements intact and in place, her prognosis for limited improvement is positive over time. *With these elements in place and the maintenance of her sobriety, she could see functional improvement over the next one to two years sufficient to allow her to sustain, at least, part-time employment.*

(AR 295.) (emphasis added). Despite the above statement, Dr. Renfro's Medical Source Statement of Ability to do Work-Related Activities (Mental), indicated that at most, Petitioner had mild limitations in her ability to understand, remember, and carry out complex instructions, and mild limitations in her ability to interact appropriately with the public, supervisors, and co-workers. (AR 297–298.) In all other areas, Dr. Renfro opined that Petitioner had no limitations. (*Id.*)

Dr. Bostwick, the medical expert and reviewing physician, also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). When considering Petitioner's mental capacities without the influence of alcohol, Dr. Bostwick concluded that Petitioner had "no significant limitations" or no limitation at all in the twenty areas of functioning listed on the form. (AR 285–287.)[1] At the hearing, Dr. Bostwick testified that the GAF score of 45 given by Dr. Renfro was too low considering the results of objective testing and

---

[1] Dr. Renfro's questionnaire was different than the one completed by Dr. Bostwick. However, the box for "no significant limitation" on Dr. Bostwick's form conforms with the box for "mild" limitations on Dr. Renfro's form.

MEMORANDUM DECISION AND ORDER - Page 7

Dr. Renfro's findings of mild limitations. (AR 31–33.) Dr. Bostwick clarified at the hearing that the GAF score is simply a "subjective" rating but that one must look at the objective data that forms the basis for the rating. (AR 33.)

Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Morgan v. Comm'r of Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial evidence in the record. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995.) Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when the opinions are supported by other evidence in the record and are consistent with it. *Morgan*, 169 F.3d at 600. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan*, 169 F.3d at 600–601. The ALJ need not accept the opinion of any physician if the opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). And, a "medical source's opinion on whether or not an individual is 'disabled' is not accorded weight because such determinations are the province of the Commissioner, not the medical source." *Bayliss v. Astrue*, No. C-08-03646-SC, 2009 WL 1816961 *6 (N.D. Cal. June 24, 2009) (citing 20 C.F.R. § 404.1527(3)(1)).

The ALJ's interpretation of the medical evidence is supported by substantial evidence in the record. Included in the ALJ's factual findings is a resolution of the conflict between Dr. Renfro's statement limiting Petitioner to part-time work, and Dr. Bostwick's opinion which did

not preclude Petitioner from full-time employment. Although the ALJ did not expressly discuss the conflict between Dr. Renfro's test results and the Mental Health Questionnaires, on the one hand, and Dr. Renfro's statement which suggested more serious limitations, the ALJ set forth his reasoning in a detailed and thorough summary of the evidence.

First, the ALJ discussed Dr. Renfro's test results in detail. (AR 16.) Dr. Renfro's test results, summarized in a lengthy report and consisting of objective tests, found no significant abnormalities. The results of Dr. Renfro's objective tests were consistent with the conclusions set forth on Dr. Renfro's Medical Source Statement of Ability to do Work-Related Activities (Mental) and with Dr. Bostwick's conclusions. The ALJ credited Dr. Renfro's analysis and Dr. Bostwick's acceptance of the objective tests Dr. Renfro administered to Petitioner, finding that the results of the testing did not support Petitioner's allegations of inability to work. (AR 16.)

The ALJ also discussed the medical evidence in the record from Petitioner's treating physicians documenting the fact that Petitioner's depression and other symptoms were controlled with medication. (AR 16; *see also* AR 224 ("continues to feel better" with medication, still "low grade depression"); AR 254 (Petitioner was "fairly stabilized" with medication).) The ALJ was not required to accept Dr. Renfro's statement that Petitioner was effectively disabled because she could perform only part-time work. Instead, the ALJ decided to give controlling weight to Dr. Bostwick's opinion, who was a nonexamining, nontreating physician, and the resulting functional capacity assessment based upon that opinion. (AR 17.) In so doing, the ALJ resolved the conflict between Dr. Renfro's single statement limiting Petitioner to part-time work and the other evidence in the record, including Dr. Renfro's test results, which supported Dr. Bostwick's opinions.

In addition, the ALJ discussed the specific aspects of Petitioner's testimony that resulted in his conclusion she was not credible concerning the intensity, persistence and limiting effects of her mental impairments. The discussion included mention of Petitioner's ability to earn money at craft fairs selling her own sewing creations, her involvement in church activities, her continued social contact with her boyfriend and friends, and her visits to the library to use the computer. (AR 15.) The ALJ also noted that Petitioner's social service coordinators recommended exposure to and assistance with vocational opportunities. (AR 17.)

Based upon the above, the ALJ concluded that the evidence did not support Petitioner's allegations that her limitations precluded her from the ability to work, and thus the ALJ indirectly discredited Dr. Renfro's conclusion that she could, at best, perform part-time work in two year's time. The ALJ, upon including all of Petitioner's limitations, found that Petitioner's anxiety and depression would require her to avoid stressful situations; avoid direct, ongoing contact with others; avoid work around hazardous machinery; and be limited to tasks requiring independent work at jobs that involve two to three steps of a repetitive nature. (AR 14.) Based upon that assessment, the AJL determined that Petitioner could perform her past relevant work as a file clerk, general laborer, and sewing machine operator. (AR 17.)

The ALJ properly set forth specific and legitimate reasons, encompassed within a detailed summary of the facts and medical evidence, for discrediting Dr. Renfro's statement, which reasons were based upon substantial evidence in the record. There is no basis for disturbing the ALJ's handling of Dr. Renfro's opinion and the ALJ's decision to credit Dr. Bostwick's testimony and opinions.

**B.      Social Security Rulings 96-5p and 85-16—Duty to Conduct an Appropriate Inquiry**

Having resolved the central issue upon review that the ALJ properly handled the conflicting evidence in the record, the ALJ had no duty to conduct a further inquiry. An ALJ is required to recontact a doctor "only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In this case, the ALJ, with support in the record, found the evidence adequate to make a determination regarding Petitioner's disability and therefore did not have a duty to recontact Dr. Renfro.

Even if the ALJ had erred, however, the duty to recontact does not apply in this case. 20 C.F.R. § 416.912(e), which sets forth the duty to recontact, applies only to a "treating physician or psychologist."[2] SSR 96-5p, which contains the policy for when to recontact medical sources, is similarly limited to "recontacting treating sources." Finally, SSR 85-16 specifies that if a

---

[2] 20 C.F.R. § 416.912(e) states, in pertinent part:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

report from a treating or nontreating consultative examiner is "incomplete," the source should be recontacted to clarify the issues.

Petitioner's argument that the ALJ was required to recontact Dr. Renfro is not persuasive. SSR 96-5p and 20 C.F.R. § 416.912(e) apply only to "treating" sources, whether that is a physician, psychologists, or other medical source. Dr. Renfro was not a treating source, but a consultative source Petitioner saw after the first hearing. Moreover, the requirement for obtaining additional information from a consultative source is triggered only when the evidence from the consultative source is inadequate to make a determination as to the claimant's disability. *Thomas*, 278 F.3d at 958. The ALJ did not make a finding that Dr. Renfro's report was inadequate to make a determination regarding Petitioner's disability. Instead, the ALJ disagreed with the single sentence in the report opining that Petitioner was, at best, limited to part-time work and adopted the findings based upon the objective tests administered to Petitioner, which Dr. Bostwick found to be reliable as well.

In summary, the ALJ acted in accordance with his responsibility to determine the credibility of the medical evidence, and he gave specific, legitimate reasons for discrediting particular opinions and adopting Dr. Bostwick's opinion.

## C. Whether Petitioner's Impairments Met or Equaled a Listing

Petitioner argues that the GAF score given by Dr. Renfro and the single sentence contained within Dr. Renfro's narrative supports a finding that Petitioner's mental health issues are severe such that she cannot sustain employment during the next two years. Consequently, Petitioner contends, her symptoms meet or equal a listing under Appendix 1, Section 12. Petitioner asserts that the ALJ's failure to resolve the inconsistency in Dr. Renfro's report

rendered the ALJ unable to determine whether Petitioner's symptoms met or equaled a listing.

As previously discussed, the ALJ adequately resolved the conflict in the medical testimony. The ALJ discussed that, to meet listings 12.04, 12.06, or 12.09, Petitioner's mental impairments "must result in at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration." (AR 13–14.) A GAF score, standing alone, is insufficient to substitute for the requirements to meet a listing. The ALJ noted that the medical evidence as a whole did not support a finding that Petitioner's mental impairments caused at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.

The Court finds that there is substantial evidence to support the ALJ's conclusion that Petitioner did not suffer from two or more "marked" limitations, or repeated episodes of decompensation of extended duration, and therefore did not meet a listed impairment for mental disorders.

## V.
## Conclusion

Based on a review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the Petition for Review be **DENIED**.



DATED: March 23, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge